## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

<table>
<tr><td>

JAMES PRITCHETT,

          Plaintiff,

   v.

CAMDEN COUNTY
CORRECTIONAL FACILITY,

         Defendant.

</td><td>

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 16-cv-08241 (JBS-AMD)

**OPINION**

</td></tr>
</table>

APPEARANCES

James Pritchett, Plaintiff Pro Se
801 W. Park Avenue, 16-F
Lindenwold, NJ 08021

**SIMANDLE, United States District Judge:**

I.   **INTRODUCTION**

    1.   Plaintiff James Pritchett seeks to bring a civil rights complaint pursuant to 42 U.S.C. § 1983 against the Camden County Correctional Facility ("CCCF") for allegedly unconstitutional conditions of confinement. Complaint, Docket Entry 1. For the reasons set forth below, the Court concludes that the Complaint: (a) will be dismissed with prejudice in part, (b) will be dismissed without prejudice in part, and (c) will be permitted to proceed in part.

    2.   28 U.S.C. § 1915(e)(2) requires courts to review complaints prior to service in cases in which a plaintiff is proceeding *in forma pauperis*. Courts must *sua sponte* dismiss any

claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. This action is subject to *sua sponte* screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) because Plaintiff is proceeding *in forma pauperis*.

3.    For the reasons set forth below, the Court will: (a) dismiss the Complaint with prejudice as to claims made against CCCF; (b) dismiss the Complaint without prejudice for failure to state unconstitutional conditions of confinement claims as to overcrowding, water, rodents, and food, 28 U.S.C. § 1915(e)(2)(b)(ii); and (c) allow the Complaint to proceed as to Plaintiff's conditions of confinement claim for inadequate medical care.

## II.    **DISCUSSION**

### A. **CLAIMS AGAINST CCCF: DISMISSED WITH PREJUDICE**

4.    Plaintiff brings this action pursuant to 42 U.S.C. § 1983[1] for alleged violations of Plaintiff's constitutional rights. In order to set forth a *prima facie* case under § 1983, a plaintiff must show: "(1) a person deprived him of a federal

---

[1] Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983.

right; and (2) the person who deprived him of that right acted under color of state or territorial law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Gomez v. Toledo,* 446 U.S. 635, 640 (1980)).

5.    Generally, for purposes of actions under § 1983, "[t]he term 'persons' includes local and state officers acting under color of state law." *Carver v. Foerster*, 102 F.3d 96, 99 (3d Cir. 1996) (citing *Hafer v. Melo,* 502 U.S. 21 (1991)).[2] To say that a person was "acting under color of state law" means that the defendant in a § 1983 action "exercised power [that the defendant] possessed by virtue of state law and made possible only because the wrongdoer [was] clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (citation omitted). Generally, then, "a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Id.* at 50.

6.    Because the Complaint has not sufficiently alleged that a "person" deprived Plaintiff of a federal right, the Complaint does not meet the standards necessary to set forth a

---

[2] "Person" is not strictly limited to individuals who are state and local government employees, however. For example, municipalities and other local government units, such as counties, also are considered "persons" for purposes of § 1983. *See Monell v. N.Y.C. Dep't of Social Services*, 436 U.S. 658, 690-91 (1978).

*prima facie* case under § 1983. In the Complaint, Plaintiff seeks $50,000 in monetary damages from CCCF for allegedly unconstitutional conditions of confinement. (Complaint § V.) The CCCF, however, is not a "person" within the meaning of § 1983; therefore, the claims against it must be dismissed with prejudice. *See Crawford v. McMillian*, 660 F. App'x 113, 116 (3d Cir. 2016) ("[T]he prison is not an entity subject to suit under 42 U.S.C. § 1983.") (citing *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973)); *Grabow v. Southern State Corr. Facility*, 726 F. Supp. 537, 538–39 (D.N.J. 1989) (correctional facility is not a "person" under § 1983). Given that the claims against the CCCF must be dismissed with prejudice, the claims may not proceed and Plaintiff may not name the CCCF as a defendant.

7.    Plaintiff may be able to amend the Complaint to name a person or persons who were personally involved in the alleged unconstitutional conditions of confinement, however. To that end, the Court shall grant Plaintiff leave to amend the Complaint within 30 days of the date of this Opinion and Order.

## B. CLAIMS OF UNCONSTITUTIONAL CONDITIONS OF CONFINEMENT FROM OVERCROWDING: DISMISSED WITHOUT PREJUDICE

8.    For the reasons set forth below, the Court will dismiss the Complaint without prejudice for failure to state a claim of allegedly unconstitutional conditions of confinement in relation to overcrowding at CCCF, 28 U.S.C. § 1915(e)(2)(b)(ii).

9.   The present Complaint does not allege sufficient facts to support a reasonable inference that a constitutional violation has occurred in order to survive this Court's review under § 1915. Even accepting the statements in Plaintiff's Complaint as true for screening purposes only, there is not enough factual support for the Court to infer a constitutional violation has occurred.

10.   To survive *sua sponte* screening for failure to state a claim[3], the Complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a

---

[3] "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Samuels v. Health Dep't*, No. 16-1289, 2017 WL 26884, slip op. at *2 (D.N.J. Jan. 3, 2017) (citing *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012)); *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)); *Mitchell v. Beard*, 492 F. App'x 230, 232 (3d Cir. 2012) (discussing 28 U.S.C. § 1997e(c)(1)); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008) (discussing 28 U.S.C. § 1915A(b)).

cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, while *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

11. With respect to the alleged facts giving rise to Plaintiff's claims, the Complaint states: "Sleep on the floor." Complaint § III(C).

12. Plaintiff states that these events occurred "Jan 2015[,] July 2015." *Id*. § III(B).

13. Plaintiff contends that he suffered "a fungus on my feet and legs" from these events. *Id*. § IV.

14. With respect to requested relief, Plaintiff seeks "50,000" in compensation from these events. *Id*. § V.

15. Even construing the Complaint as seeking to bring a civil rights complaint pursuant to 42 U.S.C. § 1983 for alleged prison overcrowding, any such purported claims must be dismissed because the Complaint does not set forth sufficient factual support for the Court to infer that a constitutional violation has occurred.

16. The mere fact that an individual is lodged temporarily in a cell with more persons than its intended design does not

rise to the level of a constitutional violation. *See Rhodes v. Chapman*, 452 U.S. 337, 348–50 (1981) (holding double-celling by itself did not violate Eighth Amendment); *Carson v. Mulvihill*, 488 F. App'x 554, 560 (3d Cir. 2012) ("[M]ere double-bunking does not constitute punishment, because there is no 'one man, one cell principle lurking in the Due Process Clause of the Fifth Amendment.'" (quoting *Bell v. Wolfish*, 441 U.S. 520, 542 (1979))). More is needed to demonstrate that such crowded conditions, for a pretrial detainee, shocks the conscience and thus violates due process rights. *See Hubbard v. Taylor*, 538 F.3d 229, 233 (3d Cir. 2008) ("*Hubbard II*") (noting due process analysis requires courts to consider whether the totality of the conditions "cause[s] inmates to endure such genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them."). Some relevant factors are the length of the confinement(s), whether plaintiff was a pretrial detainee or convicted prisoner, any specific individuals who were involved in creating or failing to remedy the conditions of confinement, any other relevant facts regarding the conditions of confinement, etc.

17. Plaintiff may be able to amend the Complaint to particularly identify adverse conditions that were caused by specific state actors, that caused Plaintiff to endure genuine

privations and hardship over an extended period of time, and that were excessive in relation to their purposes. To that end, the Court shall grant Plaintiff leave to amend the Complaint within 30 days of the date of this Opinion and Order.[4]

18. Plaintiff is further advised that any amended complaint must plead specific facts regarding the conditions of confinement. In the event Plaintiff files an amended complaint, Plaintiff must plead sufficient facts to support a reasonable inference that a constitutional violation has occurred in order to survive this Court's review under § 1915.

19. Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and cannot be utilized to cure defects in the amended complaint, unless the relevant portion is specifically incorporated in the new complaint. 6 Wright, Miller & Kane, Federal Practice and Procedure 1476 (2d ed. 1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. *Id.* To avoid confusion, the safer course is to file an amended complaint that is complete in itself. *Id.* The amended

---

[4] The amended complaint shall be subject to screening prior to service.

complaint may not adopt or repeat claims that have been dismissed with prejudice by the Court.

### C. CLAIMS OF UNCONSTITUTIONAL CONDITIONS OF CONFINEMENT FROM WATER CONDITIONS: DISMISSED WITHOUT PREJUDICE

20. Plaintiff complains that "[t]he water had brown in [it] and at one time the water was off" during his confinement at CCCF (this claim is referred to in the Court's Opinion as "the Water Claim"). Complaint III(B).

21. "[T]here is no doubt that potable water constitutes a basic human need and that water that is suitable for drinking and bathing be supplied to inmates." *Wolfe v. Christie*, No. 10-2083, 2013 WL 3223625, at *5 (D.N.J. June 25, 2013) (internal citations omitted). However, Federal Rule of Civil Procedure 8 ("Rule 8") requires pleadings to contain, *inter alia*, "a short and plain statement of . . . the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1)-(3). Even with *pro se* status, litigants must still allege facts, taken as true, to suggest the required elements of the claims asserted. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *McNeil v. U.S.*, 508 U.S. 106, 113 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008).

22. Here, Plaintiff may have found water with a brown hue (Complaint § III(B)) unsettling, and he may have regarded the

9

"one time" when "the water was off" (*id*.) as upsetting or
uncomfortable, but the Court cannot discern from Plaintiff's
non-specific contention the type of allegations Plaintiff would
intend to pursue against any particular person as to this
condition of confinement. For example, the Complaint is silent
as to: the time duration of the brown colored water and/or
cessation of water service; the purposes for which Plaintiff
intended to use the brown-hued and/or inaccessible water sources
(e.g., bathing, drinking, body temperature control, etc.);
whether Plaintiff complained of the alleged water conditions to
jail officials; whether jail officials rendered water
unavailable for punitive purposes; whether alternate sources of
water were made available to Plaintiff (*e.g.*, public area
restrooms; sinks for personal hygiene cleansing; etc.) and, if
so, how frequently; whether Plaintiff was provided with fluids,
skin cleansers, or body wipes for hand and face washing during
the water discoloration and/or cessation periods; whether
Plaintiff sustained any injury from the water situation; or
whether water was rendered unavailable by virtue of jail
maintenance activities (*see Passmore v. Ianello*, 528 F. App'x
144, 149 (3d Cir. 2013) ("[C]ourts will generally not interfere
with prison administrative matters"); *Jones v. N. Carolina
Prisoners' Labor Union, Inc.*, 433 U.S. 119, 126 (1977)

(referring to "the wide-ranging deference to be accorded the decisions of prison administrators").

23.    Its Rule 8 pleading deficiencies aside, the contextually non-specific and temporally indeterminate "brown" and "off" water (Complaint § III(B)) inconvenience or discomfort that Plaintiff may have found unsettling, upsetting or uncomfortable does not satisfy either of the two requisite prongs of a Due Process claim for denial of the minimal civilized measure of life's necessities: (a) the "sufficiently serious" objective prong, under which the conditions cited by a plaintiff must be objectively serious and must result in the denial of the minimal civilized measure of life's necessities when viewed within the context of contemporary standards of decency (*Farmer v. Brennan*, 511 U.S. 825, 832 (1994)); and (b) the "sufficiently culpable state of mind" subjective prong, under which a defendant must have demonstrated a deliberate indifference to the well-being of a plaintiff. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *Farmer*, 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 36 (1993).

24.    As to the first prong, Plaintiff has not provided facts demonstrating that he suffered any objectively verifiable injury from the water situations of which he complains. Even viewing the Complaint in the light most favorable to Plaintiff,

within the context of prison life, he has not established that he was denied "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. For example, even if proved, the mere fact that the water hue in a jail cell was somewhat different (on isolated occasions during a discrete period of time) from the color to which Plaintiff was otherwise accustomed, is not, without more, sufficient to rise to the level of a constitutional violation. *See*, *e.g.*, *Rhodes*, 452 U.S. at 349 (the Constitution "does not mandate comfortable prisons"); *Stewart v. Wright*, No. 96-1486, 1996 WL 665978, at *1 (7th Cir. Nov. 14, 1996) ("[I]t is well settled that conditions which are temporary and do not result in physical harm are not [constitutionally] actionable"); *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir. 1982) ("[A] sentence in prison is not a guarantee that one will be safe from life's occasional inconveniences").

25. As to the second prong, Plaintiff has provided no requisite facts suggesting that any defendants were deliberately indifferent and motivated by ill will with respect to water quality and access. Thus, Plaintiff has failed to satisfy the subjective standard of the Fourteenth Amendment test. Plaintiff's temporary dissatisfaction cannot provide a basis for a constitutional claim and, therefore, his disappointment with water color and inaccessibility "at one time" (Complaint §

III(B)) does not suggest a deprivation of constitutional magnitude. *See*, *e.g.*, *Diaz v. Cumberland Cty. Jail*, No. 10-3932, 2010 WL 3825704, at *4 (D.N.J. Sept. 23, 2010) (dismissing claims for lack of running water while incarcerated, and citing *Rivera v. Walker,* 2008 U.S. Dist. LEXIS 88787, at *14 (S.D. Ill. June 9, 2008)).

26.  Accordingly, Plaintiff's Water Claim will be dismissed without prejudice, with leave to amend the complaint, within 30 days after the date this Opinion and Order are entered on the docket, to meet its deficiencies as noted herein, if Plaintiff elects to pursue this claim of deliberate indifference to water conditions that, under the totality of circumstances, amounted to a serious deprivation.

### D. CONDITIONS OF CONFINEMENT CLAIMS REGARDING RODENTS: DISMISSED WITHOUT PREJUDICE

27.  Plaintiff complains that "the[re] where [sic] mice around the [w]hole place" (this claim is referred to in the Court's Opinion as the "Rodent Claim"). Complaint § III(C).

28.  This general, non-specific allegation is insufficient to satisfy either the objective or subjective components of the Fourteenth Amendment Due Process analysis.

29.  When a pretrial detainee complains about the conditions of his confinement, courts are to consider, in accordance with the Fourteenth Amendment, whether the conditions

"amount to punishment prior to an adjudication of guilt in accordance with law." *Hubbard v. Taylor*, 399 F.3d 150, 158 (3d Cir. 2005) ("*Hubbard I*"). In making such a determination, courts consider: (a) whether any legitimate purposes are served by the conditions at issue, and (b) whether those conditions are rationally related to those purposes. *Hubbard II*, 538 F.3d at 232 (quoting *Union Cty. Jail Inmates v. DiBuono*, 713 F.2d 984, 992 (1983)). Courts must inquire as to whether the conditions "'cause [detainees] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them.'" *Hubbard I*, 399 F.3d at 159-60 (citations omitted).

30. The objective component of this unconstitutional punishment analysis examines whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (citing *Bell*, 441 U.S. at 538-39, n.20), *cert. denied*, *Phelps v. Stevenson*, 552 U.S. 1180 (2008).

31. As to the constitutional test's objective prong, Plaintiff does not offer any facts that are necessary to show that he was subjected to genuine privation and hardship over an extended period of time. While unsanitary living conditions may give rise to a conditions of confinement claim, the Complaint

here expresses nothing but Plaintiff's displeasure with less than perfect jail conditions. Complaint § III(C). Plaintiff does not offer any facts that are necessary to demonstrate that the supposed rodent condition potentially jeopardized his health or in fact caused any injuries. The Complaint fails to demonstrate that his housing conditions were imposed as "punishment."

32.   Moreover, courts have, in fact, "routinely recognized that '[k]eeping vermin under control in jails, prisons and other large institutions is a monumental task, and that failure to do so, without any suggestion that it reflects deliberate and reckless conduct in the criminal law sense, is not a constitutional violation." *See*, *e.g.*, *Holloway v. Cappelli*, No. 13-3378, 2014 WL 2861210, at *5 (D.N.J. June 24, 2014) (citing *Chavis v. Fairman*, 51 F.3d 275, *4 (7th Cir. 1995) (internal citations omitted)).

33.   As to the constitutional test's subjective prong, Plaintiff has failed to allege facts showing, or from which this Court could infer, that any defendants were aware of, and disregarded, a substantial risk to Plaintiff's health and safety from the alleged rodent situation. The Complaint is void of facts showing, by way of example, that any defendants either ignored the alleged vermin at CCCF or denied Plaintiff medical treatment for any health injuries arising from the supposed rodents. Complaint § III(C). As such, Plaintiff's displeasure

with the situation is not actionable; there are no facts indicating any defendants acted with a culpable state of mind.

34.   Accordingly, Plaintiff's Rodent Claim will be dismissed without prejudice, with leave to amend the complaint, within 30 days after the date this Opinion and Order are entered on the docket, to meet its deficiencies as noted herein, if Plaintiff elects to pursue this claim of deliberate indifference to a substantial risk to Plaintiff's health and safety from the alleged rodent situation.

### E. **CONDITIONS OF CONFINEMENT CLAIMS REGARDING FOOD: DISMISSED WITHOUT PREJUDICE**

35.   Plaintiff alleges that the food served to him while he was confined at CCCF was "cold and terrible." Complaint § V. He states: "Sometime[s], the food was not fit for a dog to eat." *Id.* § III(C). These contentions are referred to in the Court's Opinion as "the Food Claim."

36.   The general allegations of Plaintiff's Food Claim are insufficient to satisfy either the objective or subjective components of a Fourteenth Amendment Due Process claim.

37.   The constitutionally adequate diet "must provide adequate nutrition, but corrections officials may not be held liable [as to claims of inadequate food] unless the inmate shows both an objective component (that the deprivation was sufficiently serious) and a subjective component (that the

officials acted with a sufficiently culpable state of mind)."
*Duran v. Merline*, 923 F. Supp.2d 702, 719-20 (D.N.J. 2013)
(citing *Stevenson*, 495 F.3d at 68 (quoting *Wilson v. Seiter*, 501
U.S. 294, 298 (1991) ("Unconstitutional punishment typically
includes both objective and subjective components")).

38. As to the first prong, "[w]hether the deprivation of
food falls below th[e] [constitutional] [objective] threshold
depends on the amount and duration of the deprivation." *Duran*,
923 F. Supp.2d at 720 (citing *Berry v. Brady*, 192 F.3d 504, 507
(5th Cir. 1999)). "Under the Eighth Amendment, which provides a
floor for the rights of pretrial detainees, *see Natale*, 318 F.3d
at 581, inmates must be served 'nutritionally adequate food that
is prepared and served under conditions which do not present an
immediate danger' to their health and well-being." *Duran*, 923 F.
Supp.2d at 720 (citing *Robles v. Coughlin*, 725 F.2d 12, 15 (2d
Cir. 1983) (quoting *Ramons v. Lamm*, 639 F.2d 559, 571 (10th Cir.
1980)); *Mora v. Camden Cty.*, No. 09-4183, 2010 WL 2560680, at *8
(D.N.J. June 21, 2010)).

39. Plaintiff has not satisfied this objective
requirement. "[I]solated instances of contaminated or spoiled
food, while certainly unpleasant, are not unconstitutional."
*Duran*, 923 F. Supp.2d at 720 ("Being served cold meals . . . is
not 'punishment' under *Bell*. So long as the food is
nutritionally adequate, the mere fact that it is unvaried or

cold does not give rise to a constitutional violation . . .")
(citing *Nickles v. Taylor*, Nos. 09-313, 09-557, 09-952, 2010 WL
1949447, at *5 (D.N.J. May 14, 2010) ("A single or occasional
incident involving spoiled food is insufficient to show that
Plaintiff has been denied life's necessities"). Here, the
Complaint does not contend that CCCF frequently served Plaintiff
"cold" or "terrible" food (Complaint § III(C), § V), that a
significant portion of Plaintiff's diet consisted of such food,
or that the supposed "substandard fare caused more than
temporary discomfort. Without facts demonstrating substantial
nutritional deprivation, such as how frequently the alleged
substandard food was served, a description of the manner in
which the food offered to Plaintiff was in fact inferior, what
other meal options were offered, and for how long during his
dates of confinement the Plaintiff was arguably compelled to eat
this food, this Court cannot find that Plaintiff has stated a
cognizable constitutional claim; that is, without additional
facts such as these, Plaintiff has not met the objective prong
of the constitutional analysis. Occasional incidents during
incarceration involving cold food (or meals that Plaintiff did
not like) are insufficient to show that Plaintiff has been
denied life's necessities. Without facts such as the degree of
continuity of the alleged inferior food occurrences, or the
injury (if any) Plaintiff sustained from such food (beyond more

than temporary discomfort or dislike), the Food Claim constitutionally falls short.

40.  As to the second prong, Plaintiff has not alleged that CCF officials possessed the requisite culpability to satisfy the subjective component of the Fourteenth Amendment analysis. As noted above, Plaintiff must establish that CCCF officials acted with "deliberate indifference" to his needs, meaning that they were subjectively aware of the alleged conditions and failed to reasonably respond to them. *Duran*, 923 F. Supp.2d at 721 (citing *Farmer*, 511 U.S. at 829 and *Mora*, 2010 WL 2560680, at *9). The test for deliberate indifference is "subjective recklessness" as that concept is understood in criminal law. *Duran*, 923 F. Supp.2d at 721 (citing *Farmer*, 511 U.S. at 839-40). Plaintiff has not offered any facts from which this Court can reasonably infer deliberate indifference by anyone at CCCF with respect to food temperature or quality.

41.  Given that Plaintiff has failed to demonstrate facts suggesting (a) that the food served to him at CCCF presented an objectively serious risk of nutritional deficiency (regardless of Plaintiff's dislike of the food he was provided) and (b) that prison officials responsible for such knew of that risk and were deliberately indifferent to it, the Complaint fails to state a claim for which relief may be granted. Accordingly, Plaintiff's Food Claim shall be dismissed without prejudice, with leave to

file an amended complaint addressing its deficiencies, within 30 days after the date this Opinion and Order are entered on the docket, if Plaintiff elects to pursue this claim of deliberate indifference to a serious nutritional deprivation.

## F. CONDITIONS OF CONFINEMENT CLAIMS REGARDING INADEQUATE MEDICAL CARE: MAY PROCEED

42. Plaintiff states that CCCF personnel delayed medical attention and medication regarding his Crohn's disease for two months and regarding his bleeding condition for 30 days. Complaint § III(C), § V. This claim is referred to in the Court's Opinion as the "Inadequate Medical Care Claim."

43. The Court will proceed Plaintiff's Inadequate Medical Care Claim.

44. The Due Process Clause of the Fourteenth Amendment applies to pretrial detainees' claims of inadequate medical care. *Bocchino v. City of Atlantic City*, 179 F. Supp.3d 387, 403 (D.N.J. 2016).

45. "[T]he Fourteenth Amendment in this context incorporates the protections of the Eighth Amendment" (*Holder v. Merline*, No. 05-1024, 2005 WL 1522130, at *3 (D.N.J. June 27, 2005) (citing *Simmons v. City of Philadelphia,* 947 F.2d 1042, 1067 (3d Cir. 1991), *cert. denied,* 503 U.S. 985 (1992)), and most cases have stated that, at a minimum, the Eighth Amendment's "deliberate indifference" standard will suffice. In

other words, "substantive due process rights are violated only
when 'the behavior of the governmental officer is so egregious,
so outrageous, that it may fairly be said to shock the
conscience.'" *Callaway v. New Jersey State Police Troop A*, No.
12-5477, 2015 WL 1202533, at *4 (D.N.J. Mar, 17, 2015) (citing
*County of Sacramento v. Lewis,* 523 U.S. 833, 846-47, n.8
(1998)). *See also Jacobs v. Cumberland Cty. Dep't of Corr.*, No.
09-0133, 2010 WL 5141717, at *4 (D.N.J. Dec. 8, 2010) ("When
executive action is at issue, a violation of the Fourteenth
Amendment right to substantive due process may be shown by
conduct that 'shocks the conscience'") (citing *A.M. ex rel.
J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.,* 372 F.3d 572, 579 (3d
Cir. 2004)).

46.   Applying this principle in the context of a claim for
violation of the right to adequate medical care, a pretrial
detainee must allege the following two elements: (1) a serious
medical need; and (2) behavior on the part of prison officials
that constitutes deliberate indifference to that need. *Estelle*,
429 U.S. at 106; *Natale*, 318 F.3d at 582.

47.   To satisfy the first prong of the *Estelle* inquiry, an
inmate must demonstrate that his medical needs are serious. The
Third Circuit has defined a serious medical need as: (1) "one
that has been diagnosed by a physician as requiring treatment";
(2) "one that is so obvious that a lay person would recognize

the necessity for a doctor's attention"; or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." *Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (internal quotations and citations omitted). When evaluating this first element under *Estelle,* courts consider such factors as "the severity of the medical problems, the potential for harm if the medical care is denied or delayed and whether any such harm actually resulted from the lack of medical attention." *Maldonado v. Terhune,* 28 F. Supp.2d 284, 289 (D.N.J. 1998).

48. The second element of the *Estelle* test is subjective and "requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need." *Holder*, 2005 WL 1522130, at *4 (citing *Natale*, 318 F.3d at 582) (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). Conduct that constitutes negligence does not rise to the level of deliberate indifference; rather, deliberate indifference is a "reckless disregard of a known risk of harm." *Holder*, 2005 WL 1522130, at *4 (citing *Farmer*, 511 U.S. at 836). "Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference." *Holder*, 2005 WL 152213, at *4 (citing *Andrews v. Camden Cty.,* 95 F. Supp.2d 217, 228 (D.N.J. 2000)). Courts have found deliberate indifference

"in situations where there was 'objective evidence that [a] plaintiff had serious need for medical care,' and prison officials ignored that evidence[,] *Nicini v. Morra,* 212 F.3d 798, 815 n.14 (3d Cir. 2000)[,] [and] in situations where 'necessary medical treatment is delayed for non-medical reasons.' *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir. 1987)." *Natale*, 318 F.3d at 582.

49.  Here, Plaintiff's contention is that he did "no[t] receive my med for two month[s] and my family would call every day [u]ntil I receive[d] my med. I kept drop[p]ing med slip for two month[s] before I was seen. I was bleeding very heavy[.] I have Croh[n]'s disease and they wait[ed] until 30 days before I went home to send me out to see a dr." Complaint § III(C). These allegations are sufficient to state a Fourteenth Amendment inadequate medical care claim.

50.  First, the Complaint identifies two conditions suffered by Plaintiff -- Crohn's disease and a bleeding condition -- that are plausibly "serious" and can cause grave harm if untreated. Plaintiff alleges he was controlling these conditions with medications and that medication was either denied or delayed. He also alleges that his conditions worsened while incarcerated: "Due to my medical conditions and not seeing a doctor in a timely fashion and getting treated and not receiving my pull-ups and bleeding, I have been mentally and

physically scared to sleep." (Complaint § V.) It is, therefore, plausible that he has grounds to allege facts establishing the *Estelle* test's "serious condition" element. Although the Complaint is silent with respect to particular diagnosis and treatment facts (such as: pre-incarceration diagnosis dates; treating physician names; symptom duration, nature and severity; the type(s) of medication denied for each condition; the medications actually administered during incarceration that were supposedly delayed; the length of delay in administering medication; and severity of reactions suffered from medication deprivation or delay), Plaintiff has nevertheless alleged more than generalities. This satisfies *Estelle*'s first element.

51.  Second, Plaintiff has alleged facts suggesting deliberate indifference by CCCF personnel, which satisfy the subjective prong under *Estelle*: "I kept drop[p]ing med slip for two month[s] before I was seen. I was bleeding very heavy. I have Croh[n]'s disease and they waited 30 days before I went home to send me out to see a dr." (Complaint § III(C).) Even though the Complaint does not describe how individual officers were personally involved and deliberately indifferent to his serious medical needs, Plaintiff's allegations suggest that CCCF personnel deliberately delayed or purposely prevented Plaintiff from receiving medical treatment without justification. *See*, *e.g.*, *Mattern v. City of Sea Isle*, 131 F. Supp.3d 305, 316

(D.N.J. 2015) (citing *Nicini*, 212 F.3d at 815 n.14) ("[T]he Third Circuit has found deliberate indifference in situations where there was 'objective evidence that [a] plaintiff had serious need for medical care,' and prison officials ignored that evidence").

52. Therefore, the Court finds that Plaintiff has stated a cause of action for inadequate medical care while incarcerated at CCCF. The Inadequate Medical Care Claim will proceed.

## III. <u>CONCLUSION</u>

53. Plaintiff is advised that, in the event he elects to file an amended complaint, it must plead specific facts regarding the conditions of confinement as to overcrowding, water, rodents, and/or food.

54. Plaintiff should also note that when an amended complaint is filed, the original complaint no longer performs any function in the case and cannot be utilized to cure defects in the amended complaint, unless the relevant portion is specifically incorporated in the new complaint. 6 Wright, Miller & Kane, Federal Practice and Procedure 1476 (2d ed. 1990) (footnotes omitted). An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit. *Id.* To avoid confusion, the safer course is to file an amended complaint that is complete in itself. *Id.*

The amended complaint may not adopt or repeat claims that have been dismissed with prejudice by the Court. The amended complaint shall be subject to screening prior to service.

55. For the reasons stated above, the Complaint is dismissed in part and shall proceed in part.

56. The Complaint: (a) is dismissed with prejudice as to the CCCF; (b) is dismissed without prejudice for failure to state a claim arising from conditions of confinement as to overcrowding, water, rodents, and food; and (c) may proceed as to claims based upon conditions of confinement from inadequate medical care.

57. An appropriate order follows.


**March 27, 2018**                    **s/ Jerome B. Simandle**
Date                                  JEROME B. SIMANDLE
                                      United States District Judge